First case is U.S. v. Hao-Kwang Tran. Ready? Good morning, I'm John Dorgan from U.S. v. Tran. Okay. Let's get started. Okay. Alright, so do you want to get started, Mr. Dorgan? Good morning. To repeat, my name is John Dorgan, and I'm here for the defendant's appellant, Hao-Kwang Tran, in this case. As I came to court this morning, I was handed a transcript from Mr. Tam Nguyen's change of plea hearing. And before I had a chance to give opposing counsel a dirtier look, I learned that it came from a higher authority. So I'd like to jump in and address the transcript right off the bat. Do we have it? I was given the understanding that the court had actually ordered it. I think it just came in. I don't have it. I don't have it either. Well, there's probably no reason to look at it. Here, we got it now. Special delivery. I gave it to the judge. What? I'll go get one for the judge. Yeah, I'll give it to the judge. Your Honor, the transcript has to do with the issue of whether Tam Nguyen's plea agreement was admissible against Hao Tran. And I think that the reason we have the transcript today is to establish that Mr. Tran was placed under oath and essentially endorsed the factual recitation in the plea agreement. My argument today is that that is insignificant, because regardless of whether the plea agreement that Mr. Nguyen was ---- What does it say? It says the court on page 13, in I think the most relevant part of the transcript, says, at this point, I'll ask the assistant United States attorney to review the facts that the government believes it could prove in this case, if this case were to proceed to trial. That's at the bottom of page 13. And then the assistant United States attorney, Ms. Rowe, recites the basic facts asserted in the plea agreement. And then this is on page 14, lines 9 and 10, says, Mr. Nguyen, together with another, picked up about 70 pounds of marijuana for redistribution that night. My argument today is that the plea agreement was not admissible because it was not inconsistent with the testimony of Mr. Nguyen at trial. Well, it depends how you read it. And obviously you read it one way. The jury can read it the other way. Well, Your Honor, I guess one way it's read is by the government. The government writes in their brief that the effect of the admission of the plea agreement was insignificant. At best, it stated it was ---- Well, we're looking at it now, as it appears to us. I'm saying to you, and I'd like to hear if you disagree with it, I read it as the Nguyen or whatever is now everybody loves it, saying, I picked this up together with Fan. We did it together. That's the way I would read it if I were a juror. We are reviewing a jury verdict. Pardon me? We are reviewing a jury verdict. If I were a juror, that's the way I would read it. I think to read it that way, Your Honor, you have to speculate and read more and more. No, why do you have to speculate? It's one way to read it. Well, he said he was together with it. Together with. No, together we did it. That's not what he says. Well, I don't ---- What page are we looking at now? Do you want to read what he says? The wording is ---- What page are you looking at? In the transcript, it's page 14, lines 9 and 10. Where do you see the numbers on this? On the left-hand column. That's not what was introduced at trial. Right. It's a slightly different wording, and I can ---- This is ---- Well, it's quoted in all the briefs. If we could find it in the briefs, we could ---- Well, I've got it in the excerpts of record, Your Honor. The page 43 of the appellant's ---- So the question is whether this was given under oath, right? Your Honor, I think the transcript establishes clearly that it was that Mr. Wynn was placed under oath at his change of plea hearing. Well, could you find where this statement is and read it? I can read you the statement that was actually admitted at the trial. That's right. Is that what you'd like to hear? Yes. Yes. This is page 43 of our excerpts. It says, All right. Now, I'm a juror. I read that. And he's saying he did it with Fan. What's wrong with that reading? Well, I'm ---- It's not your reading, but it's a perfectly good reading. I disagree that it's a perfectly good reading. I think ---- What's that? I disagree that it's a perfectly good reading, Your Honor. Why? Because under the winch of standards, it's a perfectly good reading. Under the winch of standards, you have to have the government has to prove beyond a reasonable doubt the elements of its case. And I don't believe that a jury that's a juror who speculates that together with can be read to mean that Mr. Tran also participated. Your term, speculate, of course, is loaded. There are many passages, written passages, which people may read differently, but they're perfectly reasonable to read them that way. I disagree, Your Honor. I think that the district court judge himself, when he admitted the evidence, said, I'll admit it for what it's worth. He didn't seem to think that it ---- Well, let me ask on a different grain. Let's say I agree with you and it's perfectly consistent. All it says is it was with him. Then what's the possible harm from the admission of that evidence? Well, I think that's a good point, Your Honor. I mean, I think if you view it as being consistent, then that tends to answer the question of whether or not it added anything to the government's claim. So it couldn't have been any further. Either you're right about the reading, it was perfectly consistent, and therefore it was harmless, or you're wrong about the reading and it was inconsistent and therefore admissible. I think that that's the critical question in terms of admissibility, whether or not it was inconsistent with Wynn's testimony. The Oath Business, of course, what the transcript shows is he said under oath that he picked up the marijuana with another. Which is close to what the pre-agreement says. And that's close. It hasn't named Wynn. You know, I'd love to cut hairs that way and say, well, the transcript just says with another, but the context wouldn't make it clear. Let me return all the way to the admission of this by Judge Cougar. Now, he is a very experienced trial judge. He can't admit it if it's not inconsistent. Now, he may not think much of it, but he admits it. So this very experienced trial judge judges that it is inconsistent. And are we in a position to say Judge Cougar was wrong? I don't think so. Well, I think you can hold that Judge Cougar did abuse his discretion in admitting the evidence, and my position is that when a witness takes the stand in a trial and confirms that he was with somebody at the time all of this was going on, and then in the plea agreement it says together with that person. Let's say it's inconsistent. Where does that leave you? If you say that it is inconsistent?  Where that leads me is. . . Was this transcript introduced? Was this evidence? No, it was not, Your Honor. Not part of the record, even. No. No, it has appeared. . . It's a surprise to me because you'd think the government had put it in the record. They've had it for a couple of years. Well, I think. . . And nobody asked for it until we asked for it. I think that was. . . So there's nothing in the record that shows that this, that your client was actually sworn? Actually, not our client, but the co-defendant. The co-defendant was actually sworn. Okay. Is there anything in the record before us that shows that this co-defendant was actually sworn? I believe the docket for the co-defendant's plea. . . The docket may reflect that. The government. . . What does the docket say? To be honest, Your Honor, I don't have that docket. I don't believe the government supplied it. They cited it, but they did not supply it because it was a docket for a co-defendant. So that's not in the record? No, Your Honor. I don't believe so. So we're just talking about what's in the record. That's how we're supposed to decide these cases. This was briefed. Why don't you have a seat and let's ask the government? Pardon me? Why don't you have a seat? You've only got 34 seconds. 33, 32. Okay. We'll stop the clock. May it please the Court. My name is Catherine Chrisham. I'm an assistant United States attorney for the Western District of Washington. I'm here today representing the United States. Were you the trial lawyer in this? I was not the trial lawyer in this case, Your Honor. But can you. . . This document that we asked for is not in the record. Your Honor, I do believe that it is in the record. It's not in the appellate record. It was in the trial record, and I do have the court docket here, which. . . Why wasn't it in the appellate record? I'm not certain of that, Your Honor. Well, it's just kind of sloppy work, I'd say. Now, in the record that. . . It's not in the excerpts of record. I mean, are we supposed to call in and ask for all the full record? I apologize, Your Honor. It should have been in. . . Show me where in the record that is before us that Mr. Wynn was under oath. In the court's docket, which, again, was not included, and that's our mistake. I said, what is there in the record? I don't believe that there's anything in the materials that were provided to the court. It showed he was under oath. Yes, but the court docket. . . If that's true, then that statement was inadmissible. I don't believe so, Your Honor. Why not? Because I believe that the district court did not abuse its discretion in admitting this statement because the district court had before him the court record, which showed that the co-defendant, Mr. Wynn, was placed under oath and advised of his rights, charges, and penalties, and did plead guilty. Okay, where is that court record? Do we have it? I have a copy right here, Your Honor. I mean, do we have it? It's my understanding that in a criminal trial, the whole district court record comes to this court. We don't all get copies of it, and that's why they're excerpts. So it is part of the record, Harry. It's not. . . Well, if it had been part of the record, it would have saved me a lot of time, you know. I understand that, Your Honor. A lot of time, yeah. I apologize. It should have been in there. It may be that it's not there because it's not helpful to you. I don't know what there is in this transcript that shows that the statement that was admitted was made under oath. Your Honor, the transcript is helpful to the government, and I can read you portions of that. It comes close to the statement, but there's no place in this transcript where he said, I agree under oath that everything in the plea agreement is correct. He was asked whether he had carefully reviewed the plea agreement. That's at page 6, lines 15 through 20. And the defendant stated that he did do so. And at page 14, lines 8 through 12, the government read the facts, including the statement, Mr. Wynn, together with another, picked up about 70 pounds of marijuana for redistribution that night. The court then asked, Mr. Wynn, are all these facts true? The defendant stated, yes, Your Honor. At that point. . . Very close. Thank you. And since it seems that defense counsel has conceded that that statement was under oath, I'd like to focus on whether or not it was inconsistent. And the district court judge did not abuse his discretion in admitting this statement. It was inconsistent. At trial, Mr. Wynn was outright denied that the defendant was involved in the marijuana distribution. He was asked, was Hal Quantran involved? He answered, no, he wasn't involved. And this denial was absolutely inconsistent with his statement in the plea agreement that Wynn, together with Hal Quantran, picked up approximately 70 pounds of marijuana for redistribution that night. The phrase together with does have legal meaning. It indicates the defendant and Mr. Wynn were acting in concert when they picked up that marijuana. It makes clear the defendant. . . How do we know they were acting in concert? Your Honor, that's certainly a reasonable interpretation of that sentence. It makes clear that he wasn't just physically there. He was there working with Mr. Wynn to pick up that marijuana for redistribution. And Judge Korn did not abuse his discretion. But the government had its people there watching all this, right? That's correct. Anybody testify they saw Mr. Quantran pick up anything and put it in the trunk of the car? Actually, Mr. Wynn testified that Mr. Quantran was there during the entire time. Yeah, but where? He was there. He was in this warehouse. But where? Was he in the car? He actually was not in the warehouse. He was at the Alderwood Mall. The Alderwood Mall, yeah, okay. He drove there with Mr. Wynn. They drove there together. A man that Mr. Wynn testified he'd never met before comes up, introduces himself to Mr. Wynn. Mr. Wynn then hands his car keys over to this other person. Well, yeah, well, Wynn has got, you know, they got him cold turkey. We're dealing with Tran. That's correct. But Mr. Tran stayed during this whole thing. He hung out with Mr. Wynn for about half an hour. All this man they'd never met before takes Mr. Wynn's car, comes back within half an hour, hands him the car keys again, then they get in the car and are arrested with 70 pounds of marijuana in it. Well, just because he's at the scene of where this criminal conduct took place, you can't attribute that to him, can you? Don't we have cases on that? We do, and the jury was instructed that mere presence is not enough to convict the defendant. However, there was other evidence there to show that the defendant was a member of this conspiracy. That includes the evidence of his prior conduct and prior involvement in marijuana distribution. But that was there just to show that he had knowledge. That was just limited. That was admitted for the limited purpose of knowledge, right? Your Honor, with all due respect. It was not admitted as positive evidence. It actually was admitted as positive evidence. Initially, Judge Kuhnauer, the issue was the subject of a motion to eliminate. And the trial court initially ruled that it could only be admitted under Rule 404B. But after hearing a portion of Mr. Fahm's testimony, who described how he and the defendant were involved in a distribution conspiracy that was nearly identical to the one involved in this case, the trial court himself called for a sidebar. He stated to counsel that this prior conduct took place within the five-year conspiracy period, and the distribution methods were similar to the methods used in the case. Did we have that in our record before us? That's it. The supplemental excerpt is a record at page 155. The court specifically stated that the prior conduct is, quote, within the conspiracy period. And secondly, it's very, very similar to the conduct in this case. So after hearing that evidence, the trial court changed positions and agreed to let the evidence in, both under Rule 404B and as substantial evidence of the conspiracy. This was the understanding of all the parties. I think that's made clear by the fact that in rebuttal, government trial counsel stated that Count 1 involves a conspiracy which goes back up to five years. And as you'll see in your instructions, it says that during the last five years up to including June 27, 2006. So the information that you have received with the past contact can also be taken into account for the conspiracy. That's at page 233 of the supplemental excerpt. It's a record. Is the theory that this other activity was part of the conspiracy? The jury certainly could have found that. It was remarkably similar. Mr. Tamphan testified that he had received marijuana from Mr. Tran on several occasions. He also talked about the methods that were used for him to receive the marijuana. He testified that marijuana was brought in from British Columbia to Washington in semi-trucks, which is exactly how it was brought in in this conspiracy. He also testified that a Vietnamese broker was the main contact in Canada. When the truckload came into the United States, Mr. Pham testified that he would receive a phone call and was told to leave his car at a certain location. He was then told to come back and pick it up, and when he would pick it up it would be loaded with marijuana. The jury also had testimony from Chad Shaw, who had previously distributed marijuana with the defendant in the past. He said that he had also had a very similar experience, that on one occasion he met defendant and other man at a location here in Seattle. He turned his car keys over to them, the defendant and the other individual, then took Mr. Shaw's car, came back about half an hour later, and where they had loaded it was 60 pounds of marijuana. So the jury could certainly consider that both the substantive evidence of the conspiracy and under Rule 404B as evidence of the defendant's knowledge, specifically what was going on here. The jury also heard evidence that this was a very well-organized and well-financed drug conspiracy. They heard that one of the co-conspirators had delivered $160,000. That was an opinion of a police officer, right? Your Honor, they heard evidence from the police officer that he actually received $160,000. They also heard that the... You're talking about this conspiracy. Well, when did he join the conspiracy? Your Honor, it was at some point within the five-year point before June 27th. Your Honor, is this pure speculation? Isn't it? I don't think that it's pure speculation that he was involved in it, Your Honor. Again, we had testimony from... He was there. He was there. He was in the car. He was with Wynn. And then, for the purpose of showing his knowledge of the... Then all this past stuff is admitted just on the knowledge issue. And then you're saying that the judge then said, no, it's going to come in as substantive evidence because of similarity. But do we know when this prior conduct took place? We know that it took place within the five years of the conspiracy. Mr. Pham testified that this took place in... The defendant delivered marijuana to him twice in 2003. Mr. Shaw testified that he had delivered or distributed marijuana with the defendant in 2004. Mr. Pham was... He turned government witness, right? He was. He had pled guilty in another matter in Minnesota and then testified on behalf of the government. He testified on behalf of the government because he was seeking certain advantages. He had not been sentenced yet. There was a cooperation provision in his plea agreement. Mr. Shaw. That theory that Tran was a co-conspirator, was this something that the government was aware of before this trial or just happened during the course of the trial? Well, during... Oh, the lights turned on. Yes. If the Court has no further questions, I will rest on my... Why don't you answer the question? And your question is whether or not the Court knew before the trial that he had been involved? No, the government knew. The government. The government, to my understanding, the government, during the course of the investigation, learned of this conspiracy. And in the course of preparing for trial, meeting with other witnesses, learned about how long the conspiracy had been going on for. So my understanding is that that did come up during the course of preparing for trial. Does the Court have any further questions? Yes. But at the time the government... But at the time the government brought in that witness to testify on that knowledge issue, the government didn't tell the judge that, you know, we've got evidence to show that Tran was somewhere within his five-year period of co-conspiracy. No, that was absolutely the argument the government made. The government submitted a motion to have it admitted as substantive evidence. No, no, no. At the time that... At the time that... of prior conduct to show knowledge, be admitted, did the government also advise the Court and counsel that there was also evidence of Tran's involvement in a conspiracy sometime during the five-year period? But we don't know what the date was. Did the judge know this? Did Coffner know this? Well, wasn't Tran charged with a five-year conspiracy? He was charged with a five-year, yes. The indictment charged that within the five-year period, June 27th going back five years, that he had been involved in a conspiracy. So that had been the argument from the very beginning. Well, but the thought would be that he's involved in a conspiracy that would arise out of this particular case, you know, being in the car with Wynn. So the evidence that was at trial was this was a very long-ranging conspiracy. There was plenty of money. The day after the co-conspirators got the key to the warehouse... Why did the government ask that the evidence of his prior conduct be limited on the question of knowledge? The government did not ask for that, Your Honor. The government asked that it be admitted under both theories. And so what did the judge do? The judge initially, when he first received the motion to eliminate, ruled that it could only be admitted under 404B later than during the course of the trial. Why didn't you approach the sidebar and say to the judge, well, you know, we have this other evidence, and we're going to anticipate we're going to ask that it be admitted for all purposes? The government did ask that. The judge denied that. It wasn't until that witness came up and began testifying that the judge realized how similar these conspiracies were and the methods of distributions were. That's when he called the sidebar and asked counsel to come over and said, this is the uncharged conduct, right? This is within the five years of the conspiracy. He said that he was going to let it because it was very, very similar and it was in the five years. I understand. As you came in there, asked that it be limited to knowledge, or you say both,  I don't know why at that time you didn't explain to the judge, you know, make an offer of proof what the evidence would show. Your Honor, that was in the motion that was filed by the government. The judge at that time. That was later. No, Your Honor, that was submitted before trial, an actual written motion to eliminate. Okay, so what was his ruling on that? His ruling then was, no, I'm only going to let it in for 404B. Once he started hearing the evidence is when he had the sidebar with counsel. Was all that evidence in the motion? I believe it was, Your Honor, yes. So he had it before him, but he limited its introduction, and then he changed his mind. I think maybe once he heard exactly how, really how identical these methods of distribution were. It wasn't in the papers that were filed. I have the papers. I can look at them right now. It's all right. Are there any further questions? No. I'll rest my briefs. Thank you. Your Honor, it's absolutely not true that the court changed its mind on the 404B ruling. The sidebar resulted from a defense objection. They had a brief discussion. The evidence continued to come in as it was going to from the start. The instruction limiting the evidence to knowledge was discussed before the instructions were put together. All parties agreed it was knowledge and knowledge alone. What were the instructions to the jury? Excuse me? What instructions were given the jury? The jury was instructed that the prior act's evidence was limited to knowledge and knowledge alone. That's at ER 45. Finally, Your Honor, if the- That was the jury's instruction to the jury. So when was the jury instructed, if it was, that that evidence came in as substantive evidence? Never. Never? Never. And finally, Your Honor, I guess my last point I'd like to throw out there is regarding this plea agreement. If a juror is going to read it to mean that Tran had more involvement, I would submit that the agreement should say so, that the agreement should say so, that there has to be more than simply together with. If there is more, why isn't it in there? Unless the court has any questions for me, I think I'm out of time. Okay, well, let me, I'd like to ask the government a couple questions. You heard what he said, didn't you? That the jury was instructed that that came in just for knowledge. Your Honor, the jury received a 404B instruction that was based on the Model 9 circuit during instruction. The jury did not receive a charge that it could also be considered a substantive evidence, because the judge didn't do that. It's assumed that evidence comes in as substantive evidence, unless it's otherwise limited. But that was the understanding of the parties, and I think it's very- Well, it was limited. This evidence was limited. The evidence came in as both 404B and as substantive evidence. Now, how do you say that? If the jury got the instruction of the 404B, wouldn't that limit it to that, in that way? I don't believe so, Your Honor. I believe it would only limit it to knowledge, but I think what's most important, that even if it did only come in as 404B, that still is enough for the jury to find that the defendant was linked to this conspiracy, that he was- Were there other prior act pieces of evidence introduced? It was the evidence that the jury heard was the testimony of these two individuals, Mr. Shaw and Mr. Fong, who talked about- The other acts. There was no other act besides those. Could you explain a little bit more? The judge says you can only consider this as knowledge, and how can the jury consider it for something else? I think that the jury knew that they could because government counsel at trial told them this can be considered substantive evidence. No, the judge tells them you can only consider it for knowledge. That's correct, because the judge was following the model instructions for Rule 404B. And that's a limiting instruction. I don't see how the jury can go beyond it. Your Honor, if the jury, if that was the jury's understanding and they couldn't go beyond it, I believe that that still, just the knowledge alone, even just considering that evidence in light of the defense- It wasn't substantive evidence, right? If the Court finds that it wasn't submitted for substantive evidence, I think that as- I think you might admit it as substantive evidence. I'm sorry, Your Honor? You might admit the jury had only evidence as to the man's knowledge. I believe the record is clear that the Court did admit under both, but if it only came in under 404B- Your statement that that was supplemental excerpts 155, is that what you said? Yes, I'm sorry. Let me get my- I know the government counsel with regard to the allegedly inconsistent prior statement said this is positive evidence, not just impeachment evidence, but I don't remember reading anything about this other conspiracy stuff. The Court did not explicitly state that's true, but when the government did state that it could be considered as substantive evidence, defense counsel did not object and the Court said nothing else. And I think that shows- What did the Court say at 155? The Court said, it said that the prior conduct is, quote, within the conspiracy period. And secondly, it's very, very similar to the conduct in this case. And therefore, did he add any words after that? He does not add any words after that. Did he add any words before that? Let me get my- I'm trying to get the context of those two statements. 155. Here, I'll start with 154, which is when the colloquy begins. The Court says, let me see counsel at sidebar. The Court then says, this is the uncharged conduct. Who asked for the sidebar? No one asked for the sidebar. The judge on his own called for the sidebar. Okay. I thought defense counsel said he asked for the sidebar. No, Your Honor. It was the judge that did the sua sponte. So we're at page 154. The colloquy begins at line 17. Government counsel states, the first count is a conspiracy going back five years. The Court states, okay. Defense counsel says, but it says in the last five years it's boilerplate language. Government counsel says it's a conspiracy. The Court says boilerplate or not, it's within the conspiracy period. And secondly, it's very, very similar to the conduct in this case. Defense counsel says, what I'm saying is, even looking at all the facts that the government offered as to the conspiracy count in this case, it doesn't go back beyond May of 06. Government counsel states, although all of the 404B evidence in the information given goes back further and goes back to 2001 beginning and then forward. The Court then says, go ahead, and the sidebar is concluded. So it was the understanding of the parties based on that sidebar that the evidence as well as 404B. Then make a ruling then. Go ahead. What's that mean? What was the last exchange before the sidebar? Was there an objection? There was not, no. But there was a conversation about how Mr. Fahm got the marijuana, and I can read that for you if you'd like me to. Okay. Starting at page 153, you've been talking about that the semi-trucks would go to a place. Answer, question, what kind of buildings are parking? What kind of places do the big trucks go? Answer, many places. You don't know ahead of time. You just bring your cars there, and they would put in your cars for you. Question, who would put it in your cars? Answer, the people who brought the merchandise. They were the one who put it in. Question, where would you take your car? Answer, at the 99 market at the parking lot. Question, who would pick up your car? Answer, you don't see that person. Question, how would you give your car or your keys or what was the arrangement so the person could take your car? Answer, I call on the phone to make the appointment. Who's testifying? This is Mr. Fahm, who had previously pled guilty in Minnesota to distribution of marijuana. He had testified that he had distributed marijuana with the defendant. He said, then when you get there, you leave the key on the visor of the car. And then when you get out of the car, and then they would come and get the car. Question, how many times did you get marijuana this way? Answer, many times. Question, did you ever get caught or arrested in this district? Answer, no. Question, did you get marijuana from Howtron? Answer, yes. Question, how many times? Answer, twice. Question, can you tell us about those? When? Answer, once in 2003. And about two weeks later, I receive another one. Question, where were those? At that point, the court calls for the sidebar. Without any objection having been raised. I'm sorry, Your Honor? Without any objection having been raised. Correct. Does the judge say to the lawyers, this comes in not only for knowledge but as substantive evidence? Those words were not specifically said. But, again, this was the understanding of the parties. And I think that's made clear by the fact the defense did not object when government counsel stated that in her rebuttal closing argument. You have to sleep a lot of times. It's the government's job to make sure that it's got a good record, right? Yes. Yeah. No, you have to defend the record that was given you. Yeah, we're not blaming you. I must say that for something that was so elaborately staked out by the government and so much governmental expense went into it, this is a very thin record for this particular defendant. You know, we have all seen lots of these cases. This is about as thin as it goes. Does this panel have any further questions for me? Good job. Thank you. May I, Your Honor? Yeah, okay. Well, you're the trial lawyer. No, Your Honor. Oh. Instruction number 9. Is that trial lawyer still in bed now? Excuse me? Is he still in bed? The trial lawyer? Yeah. Probably. No, Your Honor, some context. That exchange, the ruling to let in this evidence had already been made before trial. And so there wasn't any point for the defense counsel to object. You mean the ruling on knowledge? That it was going to come in, and I think that it was coming in on 404B. Well, you're going to need to be sure when you make those statements. Well, what I am sure of, Your Honor, is that instruction 9 says, you have heard evidence of other crimes engaged in by the defendant. You may consider that evidence only as it bears on the defendant's knowledge and for no other purpose. Okay. Well, why don't you fold your cards and let it sit that way. Thank you. All right. Okay. We'll call the next matter.
judges: Pregerson, Canby, Noonan